UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Unit 53, Inc., <br><br> Plaintiff, <br><br> v. <br><br> Run Roadlines, Inc., et. al., <br><br> Defendants. | No. 2:24-cv-01718-DJC-CSK <br><br> ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND SETTING HEARING ON MOTION FOR PRELIMINARY INJUNCTION |

Pending before the Court is Plaintiff Unit 53, Inc's Motion for Temporary Restraining Order and Motion for Preliminary Injunction. (Mot. (ECF No. 24).) Plaintiff seeks preliminary relief to prevent Defendants Run Roadlines, Inc. ("RRI"), Manpreet Randhawa, and 3515 Hwy 99, LLC, and their principals, agents and/or affiliates from selling, transferring, subleasing, or encumbering the 650 shipping containers that Plaintiff leased Defendant RRI. Plaintiff also seeks affirmative relief requiring RRI to provide Plaintiff with the location of the shipping containers. For the reasons discussed below the Court DENIES the Motion for Temporary Restraining Order and sets a hearing for the Motion for Preliminary Injunction.

////

////

## I. Background

Plaintiff entered into a lease agreement with RRI under which Plaintiff leased 650 shipping containers to RRI in exchange for monthly payments. (Mot. at 4.) The lease agreement stated that RRI was to provide the monthly payments beginning April 1, 2023. (*Id.*) However, Plaintiff claims that RRI has failed to make any payments. (*Id.*) The amount owed to Plaintiff is now over $5 million, with increases of $200,000 each month. (*Id.*) In response to Plaintiff's concern about the missed payments, RRI had granted Plaintiff an exclusive option to secure a deed of trust on RRI's real property, but RRI ultimately encumbered that property with a third party's lien. (*Id.*) Defendant Randhawa, one of RRI's principal agents, then executed a personal guaranty for RRI's obligations under the lease agreement. (*Id.*) However, Plaintiff alleges that Randhawa began transferring RRI's real property to Defendant 3515 Hwy 99, an insider entity of RRI that is managed by Randhawa. Plaintiff then initiated the instant suit. (*Id.*)

Following the initiation of the suit, an employee of Unit 53 saw a LinkedIn article stating that Run Rail, an alleged affiliate of RRI, has shut down all operations. (*Id*. at 5.) The employee also obtained an email sent on November 18, 2024, by Run Rail's Executive Vice President to its customers stating that the company is temporarily suspending operations. (*Id.*) Plaintiff alleges that Defendants have failed to respond in any way between November 7, 2024, and the date of this Motion. (*Id.*) Given these circumstances, Plaintiff is concerned that RRI may be liquidating and may have falsely represented to railway companies that the leased shipping containers belong to RRI, and not Unit 53. (*Id.*) Specifically, many of the leased containers have been painted to show the Run Rail logo and brand and the SCAC Code on each container can be easily re-stenciled to conceal the true user of the containers. (*Id*. at 2.).

Plaintiff seeks preliminary relief to prevent Defendants and their principals, agents and/or affiliates from selling, transferring, subleasing, or encumbering the 650 shipping containers that Plaintiff leased RRI. (*Id*. at 3.) Plaintiff also seeks affirmative relief requiring RRI to provide Plaintiff with the location of all the shipping containers

leased by RRI. (*Id.*) However, Plaintiff states that the focus of this Motion is on preventing any sale or transfer of the containers. (*Id.*)

## II. Legal Standard

The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm "just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. Of Teamsters,* 415 U.S. 423, 439 (1974). The standards for issuing a temporary restraining order and a preliminary injunction are "substantially similar." *See Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.,* 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain preliminary injunctive relief, Plaintiff must show (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). Alternatively, courts within the Ninth Circuit may consider a request for a temporary restraining order using a "sliding scale" test in which "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).

There is an even higher burden where the type of injunction sought is a "mandatory injunction." *See Garcia v. Google, Inc.,* 786 F.3d 733, 740 (9th Cir. 2015) (explaining that the plaintiff faced a "doubly demanding" burden for a mandatory injunction). To obtain a mandatory injunction, a plaintiff must show that "the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Id.* (emphasis in original). Because a mandatory injunction requires that a responsible party take an action, they are "not granted unless extreme or very serious damage will result. . . ." *Marlyn Nutraceuticals, Inc., v. Mucos Pharma GmbH & Co.,* 571 F.3d 878–79) (9th Cir. 2009).

When deciding whether to issue a temporary restraining order, the court may rely on declarations, affidavits, and exhibits, among other things, and this evidence

need not conform to the standards that apply at summary judgment or at trial. See *Johnson v. Couturier,* 572 F.3d 1067, 1083 (9th Cir. 2009).

### III. Discussion

#### A. Notice

A court may issue a temporary restraining order without notice only if the movant supplies "specific facts in an affidavit or verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65 (b)(1)(A). Additionally, a temporary restraining order may only be granted if "the movant's attorney certifies in writing any efforts to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65 (b)(1)(B).

Here, Plaintiff supplies, via affidavit, multiple efforts to contact Defendants' counsel between November 7, 2024, and the filing of the instant Motion. (Declaration of Christopher D. Hughes (ECF No. 24-3, Ex. C).) Plaintiff also alleges that "no one answers" Defendants' counsel's phones and that it is not possible to leave any voicemails. (*Id.* at 4.) Additionally, Plaintiff argues immediate and irreparable harm will occur because the LinkedIn article and email from Run Rail points to the possibility that RRI is liquidating and potentially selling off the shipping containers owned by Plaintiff. (*See id.* at 5.) While notice of the ex parte application is sufficient, for the reasons described below, these allegations do not constitute "irreparable and injury, loss or damage."

#### B. Likelihood of Success on the Merits

The first *Winter* factor, the likelihood of success on the merits, "is a threshold inquiry and is the most important factor." *Baird v. Bonta,* 81 F.4th 1036, 1042 (9th Cir. 2023) (quoting *Env't Prot. Info. Ctr.*, 968 F.3d 985, 989 (9th Cir. 2020)). Here, Plaintiff brings several claims against the Defendants, but the relief Plaintiff requests appears to hinge on Plaintiff's breach of contract claim.

A claim for breach of contract must allege (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract and (4) that the plaintiff was damaged as a result of the breach. *See* Restatement (Second) of Contracts § 203 (2007).

Plaintiff has demonstrated that a valid contract existed between the parties. The lease agreement shows that Plaintiff agreed to lease 650 units to RRI with a unit lease rate a $340.00 per month for five years with a $5,000.00 buyout after 60 months. (Declaration of Kent Delozier (ECF No. 24-2, Ex. 1-A).) The lease is signed by Plaintiff and by Randhawa for RRI. Plaintiff appears to have performed its end of the contract, as the 650 units in question are alleged to be in the Defendants' possession. (*See* Mot. at 5.) Defendants are alleged to have breached the terms of the contract by failing to issue any payments to Plaintiff since the beginning of the Lease Agreement for the 650 shipping containers. (*Id.* at 4.) Finally, Plaintiff has demonstrated that it was likely damaged because it has not received over $5 million in payments from Defendants and do not know the whereabouts of the shipping containers leased to RRI. (*Id.*) As such, the Court finds that the likelihood of success on the merits factor weighs in Plaintiff's favor.

**C. Likelihood of Irreparable Harm**

A plaintiff seeking preliminary relief must also make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter,* 555 U.S. at 22; *see All. for the Wild Rockies,* 632 F.3d at 1131 (9th Cir. 2011) (". . . plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.") "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer,* 151 F.3d 1053, 1068 (9th Cir. 2014). The injury must be immediate, and not a speculative future injury. *Caribbean Marine Servs. Co., v. Baldridge,* 844 F.2d 668, 674 (9th Cir. 1988).

Generally speaking, economic damages do not constitute irreparable injury. Damages for breach of contract is "quintessentially an action at law" for which equitable relief is unavailable. *Great-West Life, & Annuity Ins. Co. v. Knudsen,* 534 U.S. 204, 210 (2002) (quoting *Wal-Mart Stores, Inc., v. Wells,* 213 F.3d 998, 401 (7th Cir. 2000). Here, Plaintiff argues it is likely to suffer irreparable injury to its business, particularly in light of the financial expenditures that it may have to take in the event of a liquidation sale by Defendants. (Mot. at 8.) Plaintiff states that if the "dissolution rumors hold true," then RRI may sell or transfer the shipping containers to third parties. (*Id.*) In the event of a wrongful sale, Plaintiff would have to undergo further expenditures to recover the transferred proceeds and/or may not be able to recover the property from a third-party buyer or transferee. (*Id.* at 8-9.)

There are certain instances in which economic injury can be awarded, but none of those exceptions appear to apply here. For instance, economic injuries may be recoverable if they are unavailable under the cause of action raised by the Plaintiff. *E. Bay Sanctuary Covenant v. Biden,* 993 F.3d 640, 667 (9th Cir. 2021) (finding irreparable injury arising from a lack of funding, since damages are not available in a suit under the Administrative Procedures Act). But damages are certainly available under the theories asserted in the Complaint. Or irreparable harm may be found if economic injury results in some other, non-economic harm, such as where the business at issue may be bankrupted, which does not appear to be the case here. *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.,* 750 F.2d 1470, 1474 (9th Cir. 1985) ("[t]he threat of being driven out of business is sufficient to establish irreparable harm"). No such allegations are made here.

Plaintiff suggests that Defendant may be insolvent. (*See* Mot. at 8.) As an initial matter, the Court is not convinced that Plaintiff has made an adequate showing in that regard. More significantly, however, Plaintiff does not cite, and the Court is unaware of, any case holding that economic damages may be an irreparable injury *solely* because of Defendants' potential insolvency.

To the extent Plaintiff argues it need show only a mere possibility of irreparable injury to satisfy the "sliding scale" test, that argument fails. *See Stormans, Inc. v. Selecky,* 586 F.3d 1109, 1138 (9th Cir. 2009) (finding that a possibility of irreparable harm is the incorrect standard under *Winter*). The Supreme Court has expressly held that a likelihood of irreparable injury must be demonstrated in every case. *See Winter,* 555 U.S. at 20. Therefore, the Court finds that Plaintiff has not shown a likelihood of irreparable injury.

### D. Balance of Equities

A court must "balance the interests of all parties and weigh damage to each" when determining the balance of equities. *Stormans, Inc.,* 586 F.3d at 1138 (internal citations and quotations omitted). Here, the Court agrees with Plaintiff that the hardship tips in their favor. As evidenced by the lease agreement, the shipping containers belong to Plaintiff. Thus, prohibiting the Defendants and their principals, agents and/or affiliates from selling, transferring, or leasing them would not cause any hardship. Furthermore, Plaintiff has explained that any sale of the shipping containers by Defendants to third parties would make recovery difficult. (Mot. at 9.) Therefore, the balance of equities supports Plaintiff's claim for injunctive relief.

### E. Public Interest

The public interest factor takes into account the interests of non-parties and considers whether equitable relief will be adverse to the public interest. *See Winter,* 555 U.S. at 24. Here, Plaintiff makes no argument as to why this factor is satisfied. However, it appears from the facts that the public interest is served by maintaining the status quo. Given Plaintiff's business, there is a possibility that non-parties who also seek to lease shipping containers may be harmed if the containers are sold, transferred, or leased by Defendants.

## IV. Conclusion

While many of the *Winter* factors favor Plaintiff, a showing of irreparable injury is required for issuance of a temporary restraining order, even under the sliding scale

7

analysis.  *See All. for the Wild Rockies,* 632 F.3d at 1131 (discussing *Winter,* 129 S. Ct. at 375–76).  Plaintiff has not made that showing to support its request to maintain the status quo or established that the law and facts clearly favor its position to be granted affirmative relief.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's Motion for Temporary Restraining Order (ECF No. 24) is DENIED.  Plaintiff's Motion for Preliminary Injunction is set for hearing on December 20, 2024, at 1:30 PM before the Honorable Daniel J. Calabretta in Courtroom 7.  Defendant's Opposition shall be filed on or before December 11, 2024, and Plaintiff's Reply shall be filed on or before December 17, 2024.

IT IS SO ORDERED.

Dated:   **November 27, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE